UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAYE L. BROWN,<br><br>            Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>            Defendant. | No. 2:24-cv-02781 DAD SCR<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401-34.  The action has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Local Rule 302(c)(15).  For the reasons set forth below, the undersigned recommends that Plaintiff's motion for summary judgment (ECF No. 11) be denied, and Defendant's cross-motion for summary judgment (ECF No. 13) be granted.

## BACKGROUND

**I.      Procedural Background**

Plaintiff applied for DIB benefits on June 29, 2021, alleging disability beginning June 23, 2021.  Administrative Record ("AR") 28.[1]  The claim was denied initially on January 18, 2023,

---

[1] The AR is electrically filed at ECF No. 8-1.  AR page references are to the number in the lower righthand corner of the page, not the CM/ECF generated header.  References to briefs are to the page number generated on the CM/ECF header.

1

and upon reconsideration on May 19, 2022. *Id.* On June 7, 2023, Administrative Law Judge ("ALJ") Vincent Misenti presided over a telephonic hearing on Plaintiff's claim. Plaintiff participated in the hearing and was represented by attorney Ruth Carter. *Id.* Linda Ferra, an impartial vocational expert, also testified. *See* AR 68-70.

On October 25, 2023, the ALJ issued an unfavorable decision, finding plaintiff not disabled under the Act. AR 28-39. Plaintiff requested review of the ALJ's decision on December 22, 2023. AR 6. On August 21, 2024, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. AR 1-4.

## II.     Factual Background

### A. Plaintiff's Testimony

Plaintiff was born in 1961 and was 59 years old when she applied for DIB in June 2021. AR 71. Plaintiff has a high school diploma. AR 52. Plaintiff worked as a secretary for the same pyrotechnic company from June 1998 through June 2021. AR 287. Plaintiff testified that she quit her job because she "couldn't take the pain anymore."[2] AR 53.

Plaintiff testified that she considered her ankle and sciatic nerve to be the biggest medical problems that limit her from working. AR 53. Her right ankle pain stems from reconstructive surgery in 1991 and began flaring up again in 2015. She has daily pain and swelling that she treats with Advil and Voltaren. The pain is exacerbated by standing, walking, and driving. She uses a cane daily and crutches as needed. AR 54-57, 62-63. Plaintiff's sciatica causes pain down her left leg whenever she sits for more than 10 to 15 minutes. AR 56. Physical therapy has not helped her ankle pain or sciatica. AR 55-56. Plaintiff also testified to suffering from left knee arthritis pain that she treats with Advil (AR 57) and "mild depression" (AR 54) and anxiety that are "well-controlled" with medication" and do not, by themselves, keep her from working (AR 63).

Plaintiff lives in a house with her husband. AR 51. Regarding household chores, Plaintiff

---

[2] The ALJ noted this explanation may not be "entirely forthright" because plaintiff stated at her consultative examination on October 4, 2021, that she was laid off because of Covid-19. AR 37. The ALJ also noted the record shows she received unemployment benefits in August 2020. *Id.*

2

1  can do laundry if her husband carries the clothes to the laundry room. She can also feed the pets
2  and cooks dinner most nights. AR 60. Her husband handles the household cleaning. Plaintiff
3  can handle most activities of daily living except she cannot take a bath by herself. Plaintiff's
4  hobbies include reading and painting with acrylics. AR 61.

### B. Vocational Expert Testimony

Linda Ferra testified as a vocational expert ("VE"). AR 66-68. She testified that a hypothetical person of Plaintiff's same age, education and work history, and residual functional capacity could perform the work of Secretary [DOT # 201.362-010] as generally performed in the national economy. AR 67. That same hypothetical individual would not meet the requirements of the job if they needed a three-minute break after sitting for ten minutes or were off-task for 25 percent of the time. AR 67-68. That hypothetical person could perform the job of Secretary if they used a cane for ambulation. AR 68.

### STANDARD OF REVIEW

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive[.]'" *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Desrosiers v. Secretary of HHS*, 846 F.2d 573, 576 (9th Cir. 1988); *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) ("The

court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in the decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss.").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v. Commissioner*, 454 F.3d 1050, 1055 (9th Cir. 2006)).

## RELEVANT LEGAL STANDARDS

### I. Five-Step Sequential Evaluation Process

A claimant is "disabled" if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI).

The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

4

20 C.F.R. §§ 404.1520(a)(4)(i), (b); 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

*Id.*, §§ 404.1520(a)(4)(ii), (c); 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

*Id.*, §§ 404.1520(a)(4)(iii), (d); 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make her capable of performing her past work? If so, the claimant is not disabled. If not, proceed to step five.

*Id.*, §§ 404.1520(a)(4)(iv), (e), (f); 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Id.*, §§ 404.1520(a)(4)(v), (g); 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a) ("In general, you have to prove to us that you are blind or disabled"); *Bowen*, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012); *see also Bowen*, 482 U.S. at 146 n.5.

## THE ALJ'S DECISION

### I.  Sequential Evaluation Process Findings

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.  AR 30.

2. [Step 1] The claimant has not engaged in substantial gainful activity since June 23, 2021, the alleged onset date.  AR 31.

3. [Step 2] The claimant has the following severe impairments: obesity and right ankle and left knee arthritis.  AR 31-34.

4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  AR 34.

5. [Preparation for Step 4] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can lift, carry, push or pull ten pounds occasionally and less than 10 pounds frequently. She can sit for six hours in an eight-hour workday and stand and walk for two hours in an eight-hour workday. She can climb ramps and stairs occasionally, and never climb ladders, ropes, or scaffolds. She can balance, stoop, kneel, crouch and crawl occasionally. She can never work at unprotected heights. She should avoid concentrated exposure to moving, mechanical parts, and no commercial driving. AR 35-38.

6. [Step 4] The claimant can perform past relevant work as a secretary. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity. AR 38-39.

7. The claimant has not been under a disability, as defined in the Social Security Act, from June 23, 2021, through the date of this decision. AR 39.

## II.     Findings Regarding Plaintiff's Mental Impairments

The ALJ identified three severe impairments at step two of the five-step sequential evaluation process: obesity, right ankle arthritis, and left knee arthritis. AR 31. Plaintiff had additionally alleged disability on her application due to depression and anxiety. AR 265. The ALJ found Plaintiff's depression and anxiety were medically determinable but, "considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." AR 32.

The ALJ gave four reasons for this conclusion. First, the ALJ cited Plaintiff's hearing testimony that her conditions were "well controlled" with medication. AR 31-32. Second, the ALJ noted Plaintiff's testimony was consistent with the treatment evidence, specifically treatment notes from Guadalupe Robles, FNP, from February and March 2021 indicating Plaintiff did not want to see a psychiatrist but wished to continue Sertraline 50 mg daily because her anxiety was "well controlled." AR 32 (citing AR 698, 702, 705). The ALJ also cited additional treatment notes by Ms. Robles from March 1, 2023, and July 26, 2023, indicating Plaintiff's anxiety was still controlled on Sertraline 50 mg. *Id.* (citing AR 684, 680).

Third, the ALJ rejected the opinion of Clinical Psychologist Dr. Sara Bowerman, who performed a consultative examination of Plaintiff on October 4, 2021, at the request of the California Department of Social Services. AR 32. Dr. Bowerman found "moderate impairment in [Plaintiff's] ability to understand, remember and carry out an extensive variety of technical

6

and/or complex job instructions, and to respond appropriately to usual work situations." AR 32 (citing AR 505-511). The ALJ determined that Dr. Bowerman's findings were inconsistent with the above treatment evidence, the "paragraph B" criteria findings for mental functioning,[3] and Plaintiff's sworn testimony that her conditions were "well controlled" with medication. AR 32.

The ALJ also rejected the opinions of Dr. Ying, the non-examining State Agency physician who reviewed the documentary evidence on November 3, 2021, and Dr. Abrahimi, the non-examining State Agency psychologist who reviewed the documentary evidence on May 17, 2022. AR 37. Both had found moderate limitations in Plaintiff's ability to understand, remember or apply information, mild limitation in the ability to interact with others, and moderate limitation in the ability to concentrate, persist or maintain pace, or adapt or manage oneself. *Id.* (citing AR 71-93). The ALJ found their opinions unpersuasive because they relied on the "one-time examination by Dr. Bowerman," and were similarly inconsistent with Plaintiff's testimony, the treatment evidence, and the ALJ's "paragraph B" criteria findings. AR 37.

Fourth, the ALJ expounded on the broad functional areas of mental functioning, i.e., the aforementioned "paragraph B" criteria. The ALJ applied each criterion to the record evidence and made the following determinations:

1) In understanding, remembering, or applying information, the claimant has no limitations.

2) In interacting with others, the claimant has no limitations.

3) Regarding concentrating, persisting, or maintaining pace, the claimant has mild limitations.

4) As for adapting or managing oneself, the claimant has experienced no limitations.

AR 33. The ALJ ultimately concluded that "[b]ecause the claimant's medically determinable

---

[3] Paragraph B for each listing provides the criteria that ALJs must assess to evaluate how a mental disorder limits the claimant's functioning. The criteria for the conditions at issue here are: (1) Understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, and (4) maintaining pace; or adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3). To satisfy the paragraph B criteria, a claimant's mental disorder must result in extreme limitation of one or marked limitation of two paragraph B areas of mental functioning. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E.

mental impairments cause no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere." AR 33.  At the end of step two, the ALJ explained that the forthcoming residual functioning capacity ("RFC") assessment at step four "reflects the fact that the undersigned has not found any mental limitations warranted by the 'paragraph B' mental function analysis." AR 34.

## DISCUSSION

The sole issue that Plaintiff presents for review is "[w]hether the ALJ erred in crafting an RFC devoid of any limitation to account for Plaintiff's mental impairments and failing to find her mental impairments severe." ECF No. 11 at 3.  Plaintiff argues the ALJ "erred in finding that [her] mental impairments were not severe, leaving the residual function capacity assessment unsupported by substantial evidence because it does not account for [her] mental limitations or non-exertional limitations caused by pain." *Id.* at 8.

Having carefully reviewed Plaintiff's briefs, the undersigned construes this argument as raising two separate points of error in the alternative: (1) that the ALJ erred at step two by failing to conclude that her mental impairments are severe; and (2) even if Plaintiff's mental impairments are not severe, the ALJ erred in failing to consider the limitations of her non-severe mental impairments in crafting an RFC.  The court will address each argument in turn.

**I.     Whether the ALJ Erred at Step Two in Finding No Severe Mental Impairment**

As noted above, in addition to challenging the ALJ's RFC assessment, Plaintiff appears to challenge the ALJ's step-two determination itself.  For example, Plaintiff argues that the ALJ's finding that her mental impairments were "controlled with medication" "is not substantial evidence to support a finding that Plaintiff's depression and anxiety did not meet the *de minimis* standard to be found severe." ECF No. 11 at 9; *see also id.* at 11 (arguing that the medical experts' opinions are sufficient to meet the "*de minimis* standard to be a severe impairment under law.").  Defendant maintains that the ALJ appropriately concluded at step two that Plaintiff did not have a severe mental impairment. ECF No. 13 at 3.  Plaintiff counters on reply that Defendant offered no support for this conclusory assertion. ECF No. 14 at 2.

8

1    Plaintiff is correct that the step-two inquiry is a *de minimis* screening device to dispose of groundless claims. *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). However, this is not a case where the ALJ denied benefits at step two. *See Glanden v. Kijakazi*, 86 F.4th 838, 844 (9th Cir. 2023) (providing standard of review for step-two denials) (citing *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005)). Here, the ALJ decided step two in Plaintiff's favor and continued with the sequential evaluation process.

In *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017), the Ninth Circuit held that an alleged error at step two is harmless and cannot be the basis for a remand where the step was ultimately resolved in the claimant's favor. As relevant here, the Court explained:

> [Step two] is not meant to identify the impairments that should be taken into account when determining the RFC. In fact, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996). The RFC therefore *should* be exactly the same regardless of whether certain impairments are considered "severe" or not.

*Buck*, 869 F.3d at 1049 (emphasis in original). As in *Buck*, the ALJ here was required to consider limitations posed by Plaintiff's severe and non-severe impairments in assessing her RFC. Thus, because the ALJ found other severe impairments, her step-two findings regarding Plaintiff's depression and anxiety, on their own, cannot be grounds to grant Plaintiff relief. *See M.M. v. O'Malley*, 732 F. Supp. 3d 1126, 1133 (N.D. Cal. 2024) (holding the ALJ's failure to properly consider claimant's mental impairments at step two "cannot without more be the basis for remand" where the ALJ found other impairments to be severe) (citing *Buck*, 869 F.3d at 1049). Accordingly, the ALJ's step-two finding of non-severe mental impairments, by itself, does not constitute reversible error.

**II.   Whether the ALJ Erred in Not Including Mental Limitations in the RFC**

The undersigned turns next to Plaintiff's argument that the ALJ erred in "craft[ing] an RFC that was devoid of any mental limitation at all." ECF No. 11 at 11-12. As noted above, the ALJ found Plaintiff had the RFC to perform sedentary work with exertional limitations. AR 35. At the end of step two, the ALJ explained that the RFC would not contain any mental limitations

9

because none were warranted by the "paragraph B" criteria. AR 34. Plaintiff disagrees and argues her anxiety and depression, even if non-severe, cause functional limitations that the ALJ should have considered in determining her RFC. ECF No. 11 at 12.

The undersigned construes this broad challenge to the ALJ's RFC assessment as posing two separate sub-issues: (1) whether the ALJ erred in failing to include in the RFC his finding of mild impairment in Plaintiff's ability to concentrate, persist, and maintain pace; and (2) whether the ALJ erred in rejecting the medical opinions of Dr. Bowerman, Dr. Ying, and Dr. Abrahimi. The undersigned again addresses each issue in turn.

### A. The ALJ Did Not Err in Omitting Plaintiff's Mild Limitation From the RFC

Plaintiff claims the ALJ erred in failing to include in the RFC the mild limitation in concentrating, persisting, or maintaining pace identified at step two. ECF No. 11 at 12-13. The harm is evident, Plaintiff maintains, because the ALJ denied benefits at step four after finding Plaintiff could return to past relevant work as a secretary. *Id.* at 15. Defendant argues the ALJ was not required to include in the RFC a mild limitation from a non-severe impairment, because such an impairment standing alone does not significantly limit her ability to do basic work activities. ECF No. 13 at 3 (citing SSR 96-8p, 1996 WL 374184, at *5).

An RFC is, in short, "the most [a claimant] can still do despite [his or her] limitations." *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (citing 20 C.F.R. § 416.945(a)(1)). In assessing RFC, the ALJ must "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Buck*, 869 F.3d at 1049; *see also* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your [RFC]."). RFC is assessed based on the relevant evidence in the case record, including the medical history, medical source statements, and subjective descriptions and observations made by the claimant, family, neighbors, friends, or other persons. *See* 20 C.F.R. §§ 404.1545(a)(1), 404.1545(a)(3).

In determining RFC, an ALJ is required to "assess the nature and extent of [a claimant's] mental limitations and restrictions" and whether they "reduce [her] ability to do past work and

other work." *Woods v. Kijakazi*, 32 F.4th 785, 794 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1545(c)). However, "[t]he existence of a mental impairment alone does not establish functional limitation or disability." *Leddy v. Berryhill*, 702 Fed.App'x. 647, 648 (9th Cir. 2017) (citing *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993)). "While [disability] regulations require the ALJ to *consider* the effect of all plaintiff's impairments in formulating the RFC, they do not require him to translate every non-severe impairment into a functional limitation in the RFC." *Rania v. Kijakazi*, No. 2:20-cv-1541 MCE CKD SS, 2021 WL 5771663, at *3 (E.D. Cal. Dec. 6, 2021) (emphasis in original), *report and recommendation adopted*, No. 2:20-cv-1541 MCE CKD SS, 2022 WL 95228 (E.D. Cal. Jan. 10, 2022).

Here, the ALJ concluded at step two that Plaintiff's medically determinable anxiety and depression were non-severe. However, the ALJ also found Plaintiff has "at most 'mild' restriction concentrating, persisting, or maintaining pace[.]" AR 33. To support only a "mild" finding, the ALJ noted the evidence shows Plaintiff can maintain concentration and persistence to manage daily tasks and personal hygiene. AR 33. The ALJ added that Plaintiff can drive a vehicle and use public transportation independently, and that her providers do not indicate she evinces deficits maintaining pace. *Id.* The ALJ found no limitations in the other three criteria. *Id.*

At the end of the step two analysis, the ALJ clarified that the forthcoming RFC would not include any mental limitations. His full explanation is as follows:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The following residual functional capacity assessment reflects the fact that the undersigned has not found any mental limitations warranted by the "paragraph B" mental function analysis. As noted above, the undersigned finds no severe mental impairment. Furthermore, the undersigned finds no functional limitations arising out of the claimant's nonsevere depression and anxiety, as the medical record does not support functional limitations because of those diagnoses. The undersigned does not find evidence suggesting that any of the claimant's psychological impairments require specific functional limitations, and this finding is consistent with the overall evidence of record as well as her testimony.

AR 33-34. The ALJ discussed the mental impairment findings of Dr. Ying and Dr. Abrahimi, respectively, in step four, but his substantive discussion of the treatment record and Plaintiff's

11

testimony is in the step-two analysis. Therefore, whether the ALJ erred by failing to include a mild mental limitation in the RFC will ultimately turn on the sufficiency of the above statement.

Other judges in this district have aptly examined the split over the legal sufficiency of similar statements incorporating the ALJ's step two analysis into the RFC determination. *See, e.g.*, *Urzua v. Comm'r of Soc. Sec.*, No. 2:23-cv-2772 EFB, 2025 WL 565624, at *3–5 (E.D. Cal. Feb. 20, 2025); *Frary v. Comm'r of Soc. Sec.*, No. 1:20-cv-0260 SAB, 2021 WL 5401495, at *9–16 (E.D. Cal. Nov. 18, 2021). In short, some courts, citing *Hutton v. Astrue*, 491 Fed. Appx. 850 (9th Cir. 2012), have considered such statements "merely empty boilerplate statements, where 'the ALJ did not discuss or give reasoned consideration of the plaintiff's [mental impairments] in his RFC assessment.'" *D.L.P. v. Kijakazi*, No. 21-cv-0792-VKD, 2022 WL 4472064, at *4 (N.D. Cal. Sept. 26, 2022) (citing *Carlson v. Berryhill*, No. 18-cv-3107 LB, 2019 WL 1116241, at *17 (N.D. Cal. Mar. 10, 2019) (citing cases)). "More recently, however, '[o]ther district courts have distinguished *Hutton*, ruling that if the ALJ (1) states that he/she considered whether the claimant's mild metal limitations would cause functional limitations and determined they would not; and (2) substantial evidence supports that determination, then the ALJ's decision must be affirmed on appeal." *Urzua*, 2025 WL 565624, at *4 (quoting *Hilda V. A. v. Kijakazi*, No. 5:22-cv-1064 KES, 2023 WL 1107867, at *3 (C.D. Cal. Jan. 30, 2023) (collecting cases), *aff'd sub nom. Alexander v. O'Malley*, No. 23-55213, 2024 WL 612877 (9th Cir. Feb. 14, 2024)).

Several district judges have observed that the Ninth Circuit's decision in *Woods* resolved the split. *See, e.g., Maria H. v. Comm'r of Soc. Sec. Admin.*, No. 23-cv-2087 GPC (MMP), 2025 WL 868621, at *4 (S.D. Cal. Mar. 20, 2025) (collecting cases); *Tyson v. Kijakazi*, No. 1:21-cv-0688 BAM, 2023 WL 2313192, at *4 (E.D. Cal. Mar. 1, 2023); *Hilda V. A.*, No. 5:22-cv-1064 KES, 2023 WL 1107867, at *4 (C.D. Cal. Jan. 30, 2023). In *Woods*, the ALJ included no mental limitations in the RFC after finding "mild" limitations in two of the four "paragraph B" criteria. 32 F.4th at 794. The Ninth Circuit upheld the RFC, noting the claimant "does not identify any particular evidence that the ALJ failed to consider or explain why the record does not support the ALJ's findings regarding her mental functioning." *Id*. The Court added that the ALJ "reasonably rejected" the more severe limitations identified by an examining expert and properly

characterized the treatment record as "not reflect[ing] any significant complaints of mental health symptoms." *Id.*

The undersigned finds that the ALJ's statement above falls squarely within the line of cases distinguishing *Hutton* and *Woods*. The ALJ's statement is more than mere boilerplate, as he made an express finding that Plaintiff's depression and anxiety do not cause functional limitations and cited the treatment evidence and Plaintiff's testimony for support. *See Maria H.*, 2025 WL 868621, at *6 (S.D. Cal. Mar. 20, 2025) (finding no error where the ALJ supplemented boilerplate language with "additional reasoning to support conclusion that Plaintiff's mental impairments . . . do not cause more than a minimal limitation."). Earlier in step two, the ALJ had determined that Plaintiff's treatment records were consistent with her testimony that the depression and anxiety were "well controlled" with medication. *Id.* at 31-32. As discussed in more detail in the next section regarding the medical experts, Plaintiff fails to identify any treatment evidence or testimony that the ALJ did not consider or that refutes the ALJ's finding that her symptoms were controlled with medication. *See Woods*, 32 F.4th at 794.

Plaintiff points to *Lubin v. Comm'r of Soc. Sec. Admin.*, 507 Fed.App'x 709, 712 (9th Cir. 2013) as an example of an ALJ committing reversible error by not including in the RFC difficulties in maintaining concentration, persistence, or pace. ECF No. 11 at 13. However, the ALJ in *Lubin* identified *moderate* limitations.[4] As noted by Defendant, the Ninth Circuit in *Woods* upheld an ALJ's exclusion of mental limitations from the RFC where the ALJ identified only "mild limitations" in two of the four criteria. 32 F.4th at 794. *Woods* is binding authority. Other districts have consistently followed *Woods* in finding that ALJs are not required to incorporate "mild" limitations in the RFC. *See Schneider v. Comm'r of Soc. Sec.*, No. 2:21-cv-1725 DAD DMC, 2023 WL 2480861, at *6 (E.D. Cal. Mar. 13, 2023) (citing *Woods* and concluding that the ALJ did not err in excluding mild mental limitations from the RFC)*, report and recommendation adopted*, No. 2:21-CV-1725 DAD DMC, 2023 WL 2696713 (E.D. Cal.

---

[4] Indeed, some courts have found moderate limitations *must* be incorporated into the RFC. *See, e.g., Wascovich v. Saul*, 2:18-CV-0659 EFB, 2019 WL 4572084, at *4 (E.D. Cal. Sept. 20, 2019) ("Where the ALJ accepts the medical assessment of moderate limitations, those limitations must be accounted for in the RFC.") (citing *Betts v. Colvin*, 531 F. App'x 799, 800 (9th Cir. 2013)).

13

Mar. 29, 2023); *Beyer v. O'Malley*, No. 1:23-CV-1041 GSA, 2024 WL 4752426, at *4 (E.D. Cal. Nov. 12, 2024) ("Simply put, there is no requirement that mild limitations be incorporated into the RFC.") (emphasis in original).

For these reasons, the undersigned finds that substantial evidence supports the ALJ's express finding that Plaintiff's depression and anxiety cause no functional limitations warranting inclusion in the RFC. Accordingly, the ALJ did not err in excluding Plaintiff's mild limitation in concentrating, persisting, or maintaining pace from the RFC.

### B. Substantial Evidence Supports the ALJ's Rejection of the Expert Opinions

Plaintiff next objects to the ALJ's rejection of medical opinions of Dr. Bowerman, Dr. Ying, and Dr. Abrahimi. Plaintiff argues that the ALJ's finding of no mental limitation was impermissibly based on his own substituted medical opinion that her anxiety and depression were "controlled with medication." ECF No. 11 at 11. She further asserts that the ALJ "did not point to any specific evidence that would guide the Court into any understand as to why he has a better understanding of Plaintiff's mental impairments than three experienced physicians in the field." *Id.* at 12. Defendant counters that the ALJ properly evaluated the medical evidence and that his rejection of the experts' opinions was supported by substantial evidence. ECF No. 13 at 4.

"[T]he 'RFC assessment must always consider and address medical source opinions,' and in cases where the ALJ's assessment conflicts with an opinion from a medical source, the ALJ 'must explain why the opinion was not adopted.'" *Fallstead v. Astrue*, No. C 12-00156 CRB, 2013 WL 5426223, at *6 (N.D. Cal. Sept. 27, 2013) (quoting SSR 96-8P, 1996 WL 374184, *7). An ALJ's decision on how to credit a medical opinion "must simply be supported by substantial evidence." *Woods*, 32 F.4th at 787. The ALJ must "articulate . . . how persuasive" he finds "'all of the medical opinions' from each doctor' and look at supportability and consistency in the record." *Id.* at 791-92 (quoting 20 C.F.R. § 404.1520c(b)). The ALJ's decision here invokes the consistency factor, which means "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).

The ALJ's rejection of Dr. Bowerman's one-time examination findings as inconsistent

with the treatment evidence, plaintiff's testimony, and "paragraph B" criteria (AR 32-34) is well supported by the record. The ALJ cited the treatment notes of Guadalupe Robles, FNP, over a period of years that indicated Plaintiff's conditions were steadily controlled on Sertraline 50 mg. AR 32 (citing AR 680, 684). The ALJ also pointed to Plaintiff's testimony that her depression and anxiety are "well controlled with the medication." AR 32. Contrary to Plaintiff's assertion that the ALJ "play[ed] doctor," ECF No. 11 at 12, the undersigned finds no error in the ALJ's reliance on this evidence. *See Warre v. Comm'r of the Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits."); *Leddy*, 702 Fed.App'x. at 648 (affirming ALJ's finding of no mental limitations based on "treatment records indicating that [claimant's] mental impairments were well-controlled and caused mild, if any, functional limitations[.]"). Again, Plaintiff does not identify any treatment evidence or testimony that refutes her conditions were controlled on medication or that corroborates Dr. Bowerman's more severe findings.

As for the "paragraph B" criteria relevant to Dr. Bowerman's report, the ALJ determined the initial function report dated April 3, 2022, in which Plaintiff reported "no problems" following written instructions and can follow spoken instructions "fine," belied any finding of moderate limitations in understanding and carrying out instructions. AR 33 (citing AR 313). The ALJ also noted that Plaintiff demonstrated no difficulties understanding and maintaining conversation in the treatment setting and during the hearing. *Id.* In sum, substantial evidence supports the ALJ's rejection of Dr. Bowerman's one-time examination findings as inconsistent with the record evidence. *See Woods*, 32 F.4th at 792-93 (holding substantial evidence supported ALJ's rejection of expert's mental examination findings as inconsistent with the treatment record and mental status exams in the record).

The ALJ's rejection of both Dr. Ying's and Dr. Abrahimi's medical opinions as derivative of Dr. Bowerman's and, as a result, similarly inconsistent with the treatment evidence, "paragraph B" criteria, and plaintiff's testimony (AR 37), is also supported by the record. Dr. Ying, a non-examining physician, reviewed the record evidence as part of the initial disability determination

15

and expressly adopted Dr. Bowerman's finding of moderate limitations. *See* AR 81 ("CE noted moderate limitations and is adopted."). Dr. Abrahimi, a non-examining psychologist, reviewed the file on reconsideration and recommended affirming Dr. Ying's review. AR 105. As neither opinion was based on findings independent of Bowerman's, the ALJ's reasoning sufficiently articulated their respective reports' inconsistency with the record.[5] *Cf. Haagenson v. Colvin*, 656 F. App'x 800, 802 (9th Cir. 2016) (holding the ALJ erred in favoring the opinions of two state agency physicians, who did not examine the claimant or rely on independent clinical findings in forming their opinions, over the opinion of a treating physician).

Plaintiff argues that these findings do not constitute substantial evidence because the ALJ falsely equated "well controlled" conditions with an absence of functional limitations. ECF No. 11 at 11; ECF No. 14 at 3. Plaintiff points to Dr. Bowerman's report where Plaintiff described increased anxiety and depression after her son's suicide in 2008 and current symptoms such as tightness in her chest, difficulty sleeping, and feelings of social isolation. AR 506. The undersigned is sympathetic to Plaintiff's loss and agrees that these symptoms may plausibly support some mental limitations. But "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954. Because the longitudinal treatment records and Plaintiff's testimony support the ALJ's finding that her mental conditions are in fact well controlled, substantial evidence supports the ALJ's rejection of the three experts' opinions. Accordingly, the undersigned recommends that the ALJ's decision be upheld.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 11) be denied; and
2. Defendant's cross-motion for summary judgment (ECF No. 13) be granted.

---

[5] Notably, both Dr. Ying and Dr. Abrahimi offered tepid endorsements of Dr. Bowerman's findings. For example, Dr. Ying noted that Plaintiff's symptoms "are better with meds," and, after incorporating Dr. Bowerman's findings, wrote that "despite the [moderate] limitations, clmt [sic] can still perform most simple and complex tasks within her physical limitations." AR 81. Dr. Abrahimi emphasized that Plaintiff does not allege worsening mental health symptoms on reconsideration and that her mental health treatment is conservative. AR 105.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 3, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE